The Scotch Mfg, Co. v. Carr—Syllabus.

THE SCOTCH MANUFACTURING COMPANY, A CORPORATION, PLAINTIFF IN ERROR, v. STEPHEN C. CARR, DEFENDANT IN ERROR.

1. It is a cardinal rule in the construction of contracts that the intention of the parties thereto is to govern.

2. In case of an oral contract, where there is some conflict in the testimony as to just what language was used by the respective contracting parties, the construction placed upon the terms and conditions of the contract by the parties themselves may be shown and will govern.

3. The principles of technical nicety cannot be strictly applied to the construction of every day oral contracts made by plain business men in their course of trade and traffic, as to do so would frequently result in overthrowing the meaning and understanding of the parties.

4. On a conditional sale, where the seller reserves title to the property until payment of the purchase money, on default of payment thereof, as stipulated, the seller can maintain an action of replevin for such property.

This case was decided by Division A.

Writ of error to the circuit court for Santa Rosa county.

The facts in the case are stated in the opinion of the court.

*Maxwell & Reeves*, for Plaintiff in Error;

*T. F. West*, for Defendant in Error.

SHACKLEFORD, C. J.: This is an action of replevin in-
stituted by the defendant in error, Stephen C. Carr,
against the plaintiff in error, The Scotch Manufacturing
Company, a corporation, in the circuit court for Santa
Rosa county, to recover the possession of certain chattels,
consisting of oxen, yokes and bows, log cart and chains,
alleged to be of the value of $200. The declaration is in
the usual form, to which the defendant interposed a plea
of not guilty. The property was re-delivered to defendant
upon its forthcoming bond. A trial was had before a
jury, which resulted in a verdict in favor of plaintiff, in
which the value of the property was fixed at $275. Judg-
ment was duly entered, in accordance with the verdict,
against defendant and its two sureties, but it was after-
wards modified by agreement in open court so as to deduct
from the value of the property recovered as adjudged the
sum of $40 for the value of one ox, which it was agreed
defendant did not have in its possession. A writ of error
to this judgment was sued out, returnable to the present
term. Seven errors are assigned, but in view of the con-
clusion which we have reached it is unnecessary to discuss
them in detail.

We find from the testimony that the plaintiff sold the
property in question to one E. L. Hinote for the sum of
$200, to be paid at the rate of $20 per month until the
amount of the purchase money was paid. No written
contract or agreement was ever entered into or drawn up,
but the trade was consummated verbally. There is some
slight conflict in the testimony as to just what was said
between the parties at the time, but it seems clear from
the testimony of the plaintiff, of E. L. Hinote and of T. J.
Hinote, the father of the purchaser, who was present at

31—S C

the time the trade was made and took part in the negotiations, that the understanding of all the parties was that the team or property was to stand good for itself until paid for; that if the property was not paid for the purchaser was to pay rent therefor. In fact, E. L. Hinote, who was introduced as a witness by defendant, testified that the understanding was not only that the team was to stand good for itself, but that if he could not pay for it the plaintiff was to have it back, and that if he failed to pay for it, what he had already paid thereon was to go for rent. The purchaser made in all three payments, one of $40 and two of $20 each, leaving $120 still due, and he owed plaintiff two installments of $20 each, at the time he sold the team to defendant, at the time of which sale he informed defendant that he still owed plaintiff $120 thereon, which was to be paid in installments of $20 per month.

It is contended by defendant that the sale by plaintiff to E. L. Hinote should be construed as a chattel mortgage, while plaintiff contends that it was a conditional sale. Quite an array of authorities have been cited to us, but we see no occasion for discussing them. It is a cardinal rule in the construction of contracts that the intention of the parties thereto is to govern. See Pensacola Gas Co. v. Lotze, 23 Fla. 368, 2 South. Rep. 609; Webster v. Clark, 34 Fla. 637, 16 Suth. Rep. 601, S. C. 43 Amer. St. Rep. 217, 27 L. R. A. 126; Shouse v. Doane, 39 Fla. 95, 21 South. Rep. 807. If it be true, even in the case of a written contract the terms of which are doubtful or ambiguous, that the construction placed thereon by the parties themselves may be shown and shall govern, as the cited cases hold, with how much more force does this principle apply to oral contracts? The principles of

technical nicety cannot be strictly applied in the construction of these everyday oral contracts made by plain business men in their course of trade and traffic. To do so would frequently result in overthrowing the meaning and understanding of the parties. It may well be that E. L. Hinote made rather a hard bargain with plaintiff, but with that we have nothing to do. The parties were free to make what contract they pleased, so long as there was no infraction of law in so doing. The principle enunciated in Campbell Printing Press & Manufacturing Co. v. Walker, 22 Fla. 412, 1 South. Rep. 59, governs, and the action of replevin was maintainable by plaintiff against defendant, the purchaser of the property in question.

The judgment must be affirmed, and it is so ordered.

COCKRELL and WHITFIELD, JJ., concur;

TAYLOR, HOCKER, and PARKHILL, JJ., concur in the opinion.