254 SUPREME COURT OF FLORIDA.

Pine Lum. Co. v. Crystal Rive. Lum. Co. *et al.*—Syllabus.

PINE LUMBER COMPANY, *Appellant,* v. CRYSTAL RIVER LUMBER COMPANY, AND SAFE DEPOSIT & TRUST COMPANY, *Appellees.*

Opinion Filed March 5, 1913.

1. Parties *sui juris* may make contracts in their own terms and require performance as made if no rule of law or public policy is violated.

2. Where competent parties have deliberately entered into definite and complete stipulations and agreements duly evidenced in writing, and such a contract does not violate any rule of law or public policy, and no fraud, misrepresentation or overreaching, and no violation of a trust or fiduciary relation appears, and it is not shown that undue advantage is being taken of the contract under changed conditions, the courts will give effect to the contract as it discloses the valid intent and purpose of the parties.

3. Where a contract is ambiguous or incomplete, necessary provisions to effectuate its purpose may be implied under certain restrictions, but when by the express definite terms of a complete contract any action taken or omitted under it does not appear to be a violation of it, and no fraud or other illegal or inequitable conduct is shown, additional provisions will not be implied for the purpose of showing a violation when it otherwise does not appear, where the contract may be performed according to its terms.

Appealed from the Circuit Court for Citrus County.

Decree affirmed.

*H. M. Hampton* and *Hocker & Duval,* for Appellant;

*R. L. Anderson,* for Appellees.

WHITFIELD, J.—It appears that in 1903 R. J. Knight being the owner of 27,500 acres of lands and the timber thereon in Citrus, Hernando and Levy Counties, Florida, made a contract with the Crystal River Lumber Company for the sale of the timber at a stated price per acre to be conveyed in lots of not less than 2,000 acres and not more than 6,000 acres as the timber may be determined by arbitration to be needed by the Crystal River Lumber Co., the privileges of buying under the contract to "terminate absolutely at the end of twenty years from the date of this instrument." In 1904 the contract was changed and re-executed by the parties. Among other provisions of the latter contract is one that the Crystal River Lumber Company, "the said party of the first part, its assigns or successors, shall have twenty years from the date of this contract in which to take said conveyance for said timber, and to cut and remove said timber from said land, but if at the end of said twenty (20) years, it, or its assigns or successors, shall not have cut and removed such timber, they shall have ten years further time in which to cut and remove the same or so much thereof as they may desire, but shall pay to said parties of the second part, their heirs, assigns or personal representatives, legal interest on One Dollar and Fifty Cents ($1.50) per acre of such timber not cut at the end of the twenty (20) years from the end of the said twenty (20) years until the said timber is cut and removed, said interest on each acre to cease as soon as the timber is cut therefrom. Said party of the first part, its assigns or successors, shall have the right to build, operate and maintain railways, tramways, etc., over any of said land" for a period of thirty (30) years.

. . . . . . . . . . . . . . . . . ."It is the intention of the parties hereto that they will operate the one the saw mill busi- .

256 SUPREME COURT OF FLORIDA.

Pine Lum. Co. v. Crystal Riv. Lum. Co. *et al.*—Opinion of Court.

ness and the other the turpentine business in the territory named herein with mutual good will the one towards the other, each trying by all honorable means to promote the interest and welfare of the other in their respective lines of operation."

In 1911, a bill in equity was filed by the Pine Lumber Company, a purchaser of lands from Knight, against the Crystal River Lumber Company and the Safe Deposit & Trust Company, a mortgagee of the timber contract from the other defendant, seeking a cancellation on the contract, in which it is in effect alleged "that by the contracts aforesaid no immediate interest or title was vested in the said defendant, Crystal River Lumber Company, but that the said defendant was by the contracts aforesaid given the right to purchase the said timber in tracts of not less than two thousand (2,000) acres or more than six thousand (6,000) acres in any one conveyance when needed by the company for its business, and that the contracts aforesaid were and still remain executory in their nature and your orator says that the same still remain unexecuted as to about twenty-two thousand (22,000) acres of the lands therein described;"............"that the said contracts aforesaid were made, executed and delivered only for the consideration hereinabove stated and with reference to an existing state of affairs, that is to say, with reference to the fact that the said defendant, Crystal River Lumber Company, was actually engaged in the operation of its saw mills and owned the two saw mills aforesaid and with the understanding and belief between the parties to said contracts, that the said defendant would continue its operation and would from time to time continuously take conveyances of said timber and pay to the said R. J. Knight or his assigns the consideration to be paid therefor as shown by said contracts;"

........... "that during the years 1907 and 1908, R. J. Knight, who was the owner of all of the lands and property involved in this suit, caused to be incorporated two companies, the first known as the Pine Lumber Company, your orator, and the second the Knight Turpentine Company, with the intention that the lands and property, excepting turpentine rights, should be conveyed to your orator and held and owned by it, and that the turpentine rights and interest in all of the timber and lands owned by the said Knight should be conveyed to the said Knight Turpentine Company, the said R. J. Knight owning the majority of the stock in each of the companies. Your orator further says, that subsequent to the incorporation of said companies the said rights and interest above mentioned were conveyed to said companies and subsequent thereto certain foreclosure procedings for the foreclosure of certain mortgages made by the said R. J. Knight to the Consolidated Naval Stores Company was commenced and prosecuted to final decree in the Circuit Court of Citrus County, Florida, and said property, including all of the interest of the said R. J. Knight in and to the lands and timber involved in this proceding were conveyed through the foreclosure procedings to the Consolidated Naval Stores Company and by it deeded to the Knight Turpentine Company; and that afterwards, to wit: the 29th day of Apri', 1911, the said Knight Turpentine Company conveyed to your orator all the lands and timber, together with all rights excepting turpentine rights which it or the said R. J. Knight had of, in and to the timber and contracts mentioned in this bill, and your orator says that it was the intention and agreement at all times, that your orator should have and hold the timber rights of, in and to all of said timber, together with the lands, and all rights of, in and to the said lands, excepting the turpen-

tine rights, as one of the companies so organized by the said R. J. Knight, and which the said R. J. Knight at said time had and held practically all of the stock, and that although the conveyance to your orator was not made prior to the 29th day of April, 1911, by agreement of the parties your orator has been during all of the time aforesaid the owner of the said timber, together with all the rights and interest in the said lands and timber, excepting the turpentine rights;" ............................ "that the said defendant, Crystal River Lumber Company, continued its saw mill operations until about the 15th day of July, 1907, and that on or about said date the defendant shut down its saw mill and has not operated the same since that time, and that the said saw mills have actually been taken up and moved to some place unknown to your orator, and that since the said date the said defendant has not operated any saw mills and has not cut any timber whatever from the said lands or any other lands in Citrus County. Your orator charges that at the time the said defendant closed down its saw mills it had cut off the timber on about five thousand, five hundred acres, and that there now remains about twenty-two thousand acres of said timber upon the said lands;"............................"that the said defendant, Crystal River Lumber Company, is absolutely insolvent and that such insolvency was the cause of the defendant ceasing the operation of its saw mills; and your orator says, that said defendant will never, at any time, be able to resume the manufacture of lumber from the timber upon the lands herein described, and that the defendant has actually moved all of its property other than a few houses or buildings, which the said defendant still owns at Crystal River, from Citrus County, and that it does not maintain an office in said county, and your orator charges that the defendant is not carrying on any

VOL. 65, JANUARY TERM, 1913. 259

Pine Lum. Co. v. Crystal Riv. Lum. Co. *et al.*—Opinion of Court.

operation of any kind and is not engaged in any way in business, and that said defendant has actually gone out of business, and that it does not even maintain an office for the transaction of its business in the State of Florida, and that all of its mills have been moved from Citrus County, Florida, the place of its incorporation, and that in fact the said defendant, Crystal River Lumber Company, is indebted largely in excess of the value of any property owned or claimed by it, including the pretended claim of the defendant to the timber described in your orator's bill herein, and your orator says that in fact the said defendant has actually abandoned the business provided for by its charter and which it was authorized to thereby carry on, and your orator charges that in fact the said defendant will never at any time be able to continue business and cut and use the timber as provided for in said contracts aforesaid, and your orator says that said defendant has been absolutely disabled to perform its part of the said contracts above mentioned, and has actually disabled itself from performing the same on its part by the removal of its said saw mills aforesaid, and your orator says that in fact the said defendant has actually abandoned any and all intention of engaging again in the business of manufacturing lumber, and that it is not the intention of the defendant at any time to cut, use or remove the timber upon the lands herein described, or any part thereof;" ................................................
"that your orator and the said R. J. Knight have from time to time given notice to the said defendant, Crystal River Lumber Company that on account of its failure to cut and remove said timber, and because of the fact that it had disabled itself to use the same in accordance with the spirit and intent of said contract, that it had broken the same, and did insist that the defendant carry

on the same, and was in default on account of its failure to carry out the same, and your orator charges that the said defendant has broken its said contracts and that by reason of its inability to carry on the business in which it was engaged at said time and of the inability to again engage in said business, and of the fact that it had disabled itself to carry on its said business by removing its said saw mill, and by reason of its failure to cut the said timber continuously, the said defendant has broken the said contracts and thereby excused your orator from performing any of the conditions thereby required to be performed by it, or the said R. J. Knight;" ............................................ "that by reason of the fact that the contracts aforesaid are of record in the Public Records of Citrus County, Florida, that the same constitute a cloud or shadow upon the title of your orator, and your orator has been, and will be, utterly unable to use the said lands upon which said timber is growing by reason of the long term lease or timber right thereon contained in the contracts aforesaid, and that your orator is unable to sell and dispose of said timber by reason thereof, and your orator says that the said contracts amount to clouds upon the title of your orator, which should be removed by this Honorable Court;" ............................ "that the said defendants, Crystal River Lumber Company, on the 1st day of January, 1909, made, executed and delivered to C. C. Vaughan, Jr., and A. B. Small as trustees, a deed of trust or mortgage upon all of its rights and interest under the contracts herein set out; that afterwards the defendant, Safe Deposit & Trust Company, of Baltimore, was substituted as trustee in the place and stead of said Vaughan and Small, the said Vaughan and Small having resigned, and that said defendant is claiming some interest therein as trustee under

VOL. 65, JANUARY TERM, 1913.          261

Pine Lum. Co. v. Crystal Riv. Lum. Co. *et al.*—Opinion of Court.

the terms of said deed of trust or mortgage, the exact amount, nature and extent of such claim being unknown to your orator, but your orator charges that the said deed of trust or mortgage was made subsequent to the abandonment of said contracts by the said Crystal River Lumber Company and subsequent to its removal of its saw mills from Citrus County as aforesaid and subsequent to the time at which the said defendant disabled itself to carry out and perform the said contracts, and your orator charges that the said defendant had actual knowledge of the condition of affairs, and that the said mortgage was taken subject to all of the rights and equities of your orator and its predecessors, and your orator charges that the said defendant could not claim any further right or interest therein that is by law cast upon and given to said defendant, Crystal River Lumber Company, and your orator says that the said defendant had actual notice and knowledge, and also constructive notice of the terms and conditions of the contracts set forth, and of the right of the defendant, Crystal River Lumber Company, under the terms of the said contracts, and that the said deed of trust or mortgage was made by the said Crystal River Lumber Company and accepted with notice and knowledge of all of the matters and things therein set forth."

The prayer is for cancellation of the contract and the mortgage thereto.

Demurrers to the bill of complaint were sustained, and the complainant appealed.

It is contended that the contract was made with reference to the existence of an operating lumber mill of the defendant and contemplated a continuous operation of its lumber mills; and that as the mills have been discontinued and removed and the defendant lumber com-

pany is insolvent, the plaintiff has an equity for the cancellation of the contract and of the mortgage thereon given by the defendant. This contention would be more impressive of the contract did not contain in detail the agreement and did so particularly specify the length of time during which and the circumstances under which the defendant lumber company may demand conveyances of the timber. Even if the suspension of the milling operations and the failure of the defendant to demand conveyances as rapidly as the complainant would like, operate as an inconvenience or a hardship on the complainant, yet by the express terms of the contract, the defendant has until the expiration of twenty years to take the timber with the privilege of a further extension for ten years. Parties *sui juris* may make contracts in their own terms and require performance as made if no rule of law or public policy is violated. See Hooper v. Bankhead & Bankhead, 171 Ala. 626, 54 South. Rep. 549; Hubert v. Sistrunk, — Ala. —, 53 South. Rep. 819; Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922; Pensacola Gas Co. v. Lotze, 23 Fla. 368, 2 South. Rep. 609; Langley v. Owens, 52 Fla. 302, 42 South. Rep. 457; Cawthon v. Stearns Culver Lumber Co., 60 Fla. 313, 53 South. Rep. 738; Mizell Live Stock Co. v. J. J. McCaskill Co., 59 Fla. 322, 51 South. Rep. 547; Florida Ass'n. v. Stevens, 61 Fla. 598, 55 South. Rep. 981; Brown v. Beckwith, 60 Fla. 310, 53 South. Rep. 542.

It does not appear that it is practically impossible for the defendant to comply with the contract within the specified time. The defendant may be insolvent, but it does not appear to have forfeited its charter, and it may recover from its financial embarrassment in time

to comply with its contract with the complainant. The facts alleged and admitted by the demurrer do not show an abandonment or renunciation of the contract.

The added burdens of increased taxation and of expenses in protecting the timber from fire, and the great increase in the value of the timber, are mere incidents naturally occurring within the time limitations of the contract that is carefully framed by the parties thereto.

The facts that the complainant has completed his turpentine operations on the land and that the defendant has so far called for only a small part of the total purchase, and even the fact of the removal of the lumber mills do not of themselves violate any provision of the contract; and do not indicate that the defendant has so failed to operate the saw mills as to violate the provision for "mutual good-will, the one towards the other, each trying by all honorable means to promote the interest and welfare of the other in their respective lines of operations," as is stipulated in the contract. Even if it is, as alleged, the intention of the defendant lumber company not to again engage in manufacturing lumber, it is expressly authorized to assign the contract so such assignor may complete the contract according to its terms.

It hardly lies in the mouth of this complainant to stress this provision of the contract, made between non-competitive parties. This assignee is in the same business as the Crystal River Lumber Company, while its assignor Knight was in a non-competing business, and the mutual good-will features has been in large measure, if not wholly, destroyed by the act of the party now complaining.

No provision of the contract or of law is violated by

the giving of the mortgage on the contract, and no lack of good faith is shown. The delay in calling for conveyances of the timber and the removal of the lumber mills may not have been contemplated by the contract, but the stipulations are not violated by such delay and removal, and there is nothing to indicate that the terms of the contract may not yet be completely and fully performed by the defendant or its assignees before the expiration of the time expressly stipulated for by the parties.

The mortgage is no more of a cloud on the title to the land than was contemplated by the parties or than is the legal consequence of the express agreements of the parties.

Where competent parties have deliberately entered into definite and complete stipulations and agreements duly evidence in writing, and such a contract does not violate any rule of law or public policy, and no fraud, misrepresentation or overreaching, and no violation of a trust or fiduciary relation appears, and it is not shown that undue advantage is being taken of the contract under changed conditions, the courts will give effect to the contract as it discloses the valid intent and purpose of the parties.

Where a contract is ambiguous or incomplete, necessary provisions to effectuate its purpose may be implied under certain restrictions, but when by the express definite terms of a complete contract any action taken or omitted under it does not appear to be a violation of it, and no fraud or other illegal or inequitable conduct is shown, additional provisions will not be implied for the purpose of showing a violation when it otherwise

does not appear, where the contract may be performed according to its terms.

The decree is affirmed.

SHACKLEFORD, C. J., AND TAYLOR AND COCKRELL, J. J., concur.

HOCKER, J., takes no part.